Antonio Escudero Caballero et al., Plaintiffs and Appellants, *v.* Tomás Mulero, Defendant and Appellee.

No. 8711. Argued November 15, 1943.—Decided May 5, 1944.

552

*Mariano Acosta Velarde, Federico Acosta Velarde,* and *Daniel Pellón* for appellants. *Joseph F. McPherson, Special Assistant to the Attorney General of the United States,* and *Antonio Riera, Special Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Antonio and María Carmen Escudero in their complaint alleged that they were the owners in fee of an islet called "Cayo Sudoeste" or "Luis Peña," near Culebra Island, which immovable was recorded in the Registry of Property of Humacao; and that the defendant withholds the material possession of the whole of said islet at sufferance, without paying any rent or consideration and without any title or right thereto and against the will of the plaintiffs.

Mulero answered the complaint and demurred thereto on the ground of insufficiency, as he was only a caretaker employed by the Navy Department of the United States; and that the Government can not be sued without its consent. As new matter of defense, he further alleged that the person who holds the actual possession of the property is not the defendant but Lieutenant A. C. Brown of the United States Navy, with offices in the city of San Juan, Puerto Rico.

During the first hearing (*comparecencia*), after the parties had introduced documentary and oral evidence, "on motion of the attorneys for the plaintiffs, it was stipulated to postpone indefinitely the second hearing, as the Federal Government was interested in the case."

On November 29, 1939, the defendant filed an amended answer in which he denied that the plaintiffs were the owners in fee or otherwise, or were entitled to the possession, of the property the subject matter of the action. He admitted that he was holding the actual possession of the property but denied that such holding was without any right or title or against the will of the plaintiffs, and on the contrary alleged that he held possession of the property involved in the litigation in his capacity as caretaker of the same, by virtue of an appointment issued in his favor by the Secretary of the Navy of the United States on behalf of the United States of America. As special defenses, the defendant alleged that his possession was the possession of the United States of America by virtue of the appointment above mentioned; that this nation has been the owner of the property ever since the year 1899 by virtue of the Treaty of Peace between the United States and Spain; that pursuant to an Executive Order of December 17, 1901, and of an Act of the Congress approved July 1, 1902, said property was reserved by the President of the United States for naval use. That as a result of those provisions, the Navy Department of the United States of America has held continuous, peaceful, and uninterrupted possession thereof from the year 1901 to the time of the filing of the complaint in this case, that is, January 12, 1939, and that, consequently, any title or right which the plaintiffs may have had to the property in question has prescribed in favor of the United States of America.

On June 3, 1941, the defendant, by a verified motion, requested that the court set aside the first hearing. The plaintiffs objected to said motion and the court, after a proper

554

setting and after hearing the defendant without the appearance of the plaintiffs, rendered an order on July 7, 1941, sustaining defendant's motion and setting aside the first hearing held on January 23, 1939, "in order that the defendant may utilize the evidence available to him, giving the plaintiffs a like opportunity to introduce any evidence they may have, in view of the attendant circumstances, and it sets this case for a new hearing for the 21st of the present month, at 9 a. m."

After both hearings had been held on July 21 and August 4 and 11, 1941, respectively, the court rendered judgment on April 13, 1942, dismissing the complaint on the merits.

Feeling aggrieved by that judgment, the plaintiffs appealed therefrom to this court, and in their brief they have assigned eight errors as committed by the lower court.

 In the first assignment it is urged that the lower court erred in granting the motion of the defendant-appellee to set aside the first hearing, as said court rested its decision on §140 of the Code of Civil Procedure, thus "disregarding the mandatory provision of the Unlawful Detainer Act," which peremptorily provides "for the holding of two hearings, one for the submission of the evidence and another for the introduction thereof."

Accordingly, they cite §§5 and 6 of the Unlawful Detainer Act, and maintain that the provisions of said Act allow the judge no discretion "to alter the hearings or to set them aside, unless with the express consent of the parties"; and in support of their contention they cite the case of *Avalo* v. *District Court,* 39 P.R.R. 764, 766, where it was held that a court has no authority "to combine two appearances save with the consent of or waiver by the defendant." In the cited case this court said:

"It is evident that the defendant was forced to trial without knowing what was the proof of the plaintiff and hence the defendant

had no opportunity to ponder over the written evidence and object to it, or with due preparation to cross-examine the witnesses of the plaintiff. None of these matters was cured by allowing the defendant to appear thereafter. All these possible privations are covered by the statement that the provisions for two appearances are mandatory.''

As may be seen, the *Avalo* case differs substantially from the one at bar. There the court combined the two hearings into one and they were held on the same day, whereas in accordance with the Unlawful Detainer Act it was necessary that two hearings be held, unless the defendant consented thereto or waived such requirement. In the instant case a preliminary hearing was held which, on motion of the defendant and over the objection of the plaintiffs, the court, in the exercise of its discretion, set aside, permitting the holding of a new preliminary hearing in order to give the defendant an opportunity to present his evidence in accordance with his amended answer.

It should be noted that after the first hearing was held on January 23, 1939, ''on motion of the attorneys for the plaintiffs, it was stipulated to postpone indefinitely the second hearing, as the Federal Government was interested in the case.''

In the first place, we fail to see what prejudice could have been caused to the plaintiffs by the setting aside of the first hearing. It was on their own motion that the second hearing had been indefinitely postponed, and as appears from the fourth paragraph of the very motion of ''Opposition to the motion to set aside the first hearing'' filed by the plaintiffs (Judgment Roll, p. 12 *et seq.*), ''after the first hearing had been held the parties entered into a series of discussions and conversations seeking to settle this case administratively and without judicial intervention; but these efforts proved fruitless and meanwhile the setting of the second hearing remained pending pursuant to the stipulations set forth in the record of this case.''

And in the same motion, paragraph 6, the plaintiffs stated:

"6.—That about the month of September 1940, Federico Acosta Velarde, Esq., one of the attorneys for the plaintiffs, wrote to Tomás I. Nido, Esq., one of the attorneys for the defendant, a letter which textually reads as follows:

" 'September 20, 1940. Tomás I. Nido, Esq., U.S. District Attorney, San Juan, Puerto Rico. In re: Antonio y María Escudero vs. Tomás Mulero.—Dear friend and colleague: Confirming our recent talk, I beg to advise you that in the name and on behalf of the Heirs of Escudero, we have decided to dismiss the action of unlawful detainer pending before the District Court of Humacao in the above-entitled cause in order to file instead in the Federal Court an action of revendication. At the opportune time we will send you the motion for dismissal. Very truly yours, (Signed) Federico Acosta Velarde.' "

Frankly, we fail to perceive any reason for sustaining the first error assigned by the appellants. The action of unlawful detainer is a summary action and, accordingly, the whole of the proceeding provided by the Code of Civil Procedure is one established with a view to a speedy prosecution of the suit. In the case at bar, by stipulation of the parties and on motion of the plaintiffs, the holding of the second hearing was indefinitely postponed; some conferences were held by the parties looking to a settlement of the case "administratively and without judicial intervention"; and finally, without any objection on the part of the plaintiffs and after more than two years had elapsed from the holding of the first hearing in the case, the defendant was allowed to file an amended answer to the complaint.

What could be more natural than the action of the court in exercising its discretion to grant the defendant's request that the preliminary hearing be set aside and that he be permitted to offer evidence on the allegations contained in his amended answer? We see no objection to this. The plaintiffs can not complaint of any delay in the proceedings,

for, as we have seen, more than two years had elapsed since the holding of the first hearing, and a few days more could in no way prejudice those who had already waited so long.

It is urged that the court had no power under §140 of the Code of Civil Procedure to set aside the first hearing, as the provisions of the Unlawful Detainer Act are mandatory and can not be subject to the discretion of the court.

In *Gutiérrez et al.* v. *Foix et al.* (1915), 23 P.R.R. 68, this court quoted from the case of *Melde* v. *Reynolds*, 129 Cal. 308, construing §473 of the California Code, from which our §140 was taken, as follows:

"This is a remedial provisión, and under the terms of section 4 of the same code, which require it to be liberally construed with a view to effect its objects and promote justice, is observed by a disposing of causes upon their substantial merits, rather than with strict regard to technical rules of procedure. The discretion of the court ought always to be exercised in conformity with the spirit of the law, and in such manner as will subserve rather than impede or defeat the ends of justice, regarding mere technicalities as obstacles to be avoided rather than as principles to which effect is to be given in derogation of substantial right. (Citing authorities.)"

The same liberal doctrine has been applied by this court in construing the rules of procedure pertaining to the action of unlawful detainer. Thus in *Garcia* v. *Brignoni et al.* (1915), 22 P.R.R. 331, 338, this court speaking through the then Associate Justice Del Toro said:

"It is true that section 6 of the Unlawful Detainer Act . . . . provides that the proofs submitted at the first hearing 'shall be heard within a period which in no case shall exceed ten days,' but it is also true that this provision should be construed in such a manner as to allow it to conform to the circumstances which may accompany human transactions. It is understood that certain fixed periods of time, . . . . . are absolute and cannot be extended; but there are others whose very character indicates that they should be, and actually are, capable of being extended although the law is silent on that point . . ."

Subsequently this court also said:

"The purpose of the preliminary hearing (in cases of unlawful detainer) is to apprise the parties of the documentary evidence to be offered at the trial, in order to expedite the summary proceeding and afford a mutual opportunity to prepare to meet the issues so joined." (Parenthetical matter supplied.) *Román* v. *Pérez*, (1923) 31 D.P.R. 756, 759.

What the court did in setting aside the previous preliminary hearing and in giving Mulero an opportunity to submit evidence at a new preliminary hearing to support his amended answer was to afford the plaintiffs a new opportunity to prepare to meet the new allegations made by the defendant in his amended answer. The court, therefore, only exercised its discretion for the benefit of the parties, by giving each of them an opportunity to submit new evidence which must necessarily have arisen or been found in the course of over two years; and since both parties were benefited thereby, and everything was done in the furtherance of justice, we do not find that any prejudice has been caused to the plaintiffs-appellants, nor that the court abused its discretion in acting the way it did. We do not think that the first error assigned has been committed.

██ The second, third, and fourth assignments will be considered jointly, as they are based on the same ground, to wit, "that the documentary evidence mentioned therein was inadmissible, as it failed to conform to appellee's answer wherein, according to the appellants, there is no allegation regarding the nonexistence or nullity of plaintiffs' title."

The evidence which, as claimed by the plaintiffs, had been erroneously admitted was the following:

(*a*) The documents relating to the report of the commission appointed to execute the preliminary work in connection with the settlement of Culebra Island;

(b) The petition of Don Cayetano Escudero dated July 11, 1881, for the grant of Luis Peña Key; and

(c) A communication addressed to Don Cayetano Escudero and dated July 30, 1881.

The defendant in his amended answer and as special defenses alleged, in brief, (1) that his possession was the possession of the United States by virtue of the appointment of caretaker issued in his favor by said Government, that nation being the owner of the property involved in the unlawful detainer proceeding since the year 1899 by virtue of the Treaty of Peace between the United States and Spain, and that by an Executive Order of December 17, 1901, and by the Act of Congress of July 1, 1902 (32 Stat. 731), said property was reserved by the President of the United States for naval use. (2) That the Federal Department of the Navy, acting on behalf of the United States of America, has held continuous, peaceful, and uninterrupted possession of the property in controversy from the year 1901 to the time of the filing of the complaint. (3) That any right or title which the plaintiffs may have had to said property has prescribed and is now vested in the United States.

The documentary evidence offered by the defendant and referred to in the second, third, and fourth assignments, was submitted by him in order to support the special defenses set up in his amended answer. Said documentary evidence was conditionally admitted by the court which reserved its decision upon the merits thereof. When the question regarding the admissibility of such evidence was raised at the trial, the following incident occurred:

"Judge: 'But these documents refer to possible defects in the title of Cayetano Escudero; they do not refer to the Federal Government.'

"Defendant: 'Once these documents have been examined, the court will conclude that these lands belonged to the Spanish Government and later, by virtue of the Treaty of Paris, to the Government of the United States.'

"Judge: 'The court thinks that the better practice in this case would be to reserve its ruling for such time as the court is ready to render a decision on the merits. But in view of the fact that these questions of evidence involve a careful reading of all these documents and also the reading of certain Spanish laws and legal provisions, the court thinks that it will admit these documents conditionally, without it implying that it thinks that they prove the nonexistence.'

"Plaintiff: 'Which are the documents that are to be admitted?'

"Defendant: 'Report of the commission appointed to execute the preliminary work in connection with the settlement of Culebra Island . . . .'

"Plaintiff: 'As being inmaterial and irrelevant under the allegations, and other objections which in order to save time, have not been repeated . . .'

"Judge: 'The court admits them conditionally, subject to a further study to be made by it.'

"Plaintiff: 'We take exception.' "

As may be seen, said documents could only be admitted by the lower court conditionally at the same time that they were offered, since they answered a purpose on the part of the defendant to show that the title of the plaintiffs had reverted to the Crown of Spain for failure to comply with the conditions of the grant of Luis Peña Key made in favor of Mr. Escudero, predecessor in interest of the plaintiffs. Their admissibility was conditioned upon the court making a study of said documents in order to decide whether defendant's contention had any basis which might enable the court to determine whether there was really a conflict of titles precluding the action of unlawful detainer, since the court could not consider the question of title on its merits, according to the doctrine upheld by this court in numerous cases.

The lower court had to study said evidence in order to be able to decide whether the same was enough to indicate that the defense set up was not a mere pretext. (*Colón* v. *Colón*, 51 P.R.R. 95.)

Regarding the conditional admission of evidence, this court in the case of *Colón* v. *Colón*, at p. 102, said:

"The district judge admitted certain evidence provisionally for what it was worth and took under advisement the question as to its admissibility. Ordinarily the better practice is to decide questions of evidence as presented but, in the absence of any showing as to prejudice, the error, if any, is not sufficient ground for reversal."

The fifth assignment of error is to the effect that the lower court erred "in admitting conditionally that after studying the question it would decide whether it would take judicial notice of deed No. 48 of April 27, 1908, executed before Notary Herminio Díaz Navarro, although the same had not been submitted at the first hearing." Inasmuch as the question thus raised is similar to the one we have just examined, we deem it unnecessary to discuss the same.

■■ The appellants urge that the lower court committed a sixth error "in finding that the Federal Government acquired its title by prescription of thirty years without said Federal Government being a party to the suit or having applied for intervention therein."

In connection with this alleged error the appellants quote the pertinent findings of the lower court and copy from the latter's opinion the following paragraph:

"The defendant has introduced evidence, which the court believes, tending to show that the Federal Government through its agents has held public, peaceful, and uninterrupted possession as owner of the land involved in this litigation for a period of over thirty years. In the circumstances, the evidence has been sufficient to raise a conflict of titles. We think and hold that, in order to sustain the complaint it is not necessary that it be definitely shown that the Federal Government acquired title by prescription, but that it is sufficient if the Federal Government makes out a *prima facie* case resting on a credible or probable basis and not devoid of all proof that it held possession of the land in the manner required by law."

There is no doubt that the lower court committed an error. At no time was the Federal Government before the court; in no way did it intervene in the suit nor was it a party to the same. It was so admitted by the parties and

562

declared by the court during the trial when the following incident occurred:

"Plaintiffs: 'We call attention to the fact that this suit is not one against the Federal Government.'
"Defendant: 'We admit that.'
"Plaintiffs: 'It is a private individual who admits he is in possession of the land, but that the Government of the United States is the owner of this land by virtue of certain laws.'
"Judge: "Up to now the controversy is between the plaintiffs and the defendant Tomás Mulero.'
"Defendant: 'Yes, sir, we admit that the Government is not a party here.' "

There is involved in this case an action of unlawful detainer at sufferance brought by the brothers Escudero Caballero to recover the possession of an immovable which they claim to own, and accordingly they have presented a title recorded in the Registry of Property of Humacao. The action is directed against Tomás Mulero who was alleged to withhold the possession of the property without any title thereto. By way of defense, Mulero alleges that he is in possession of the property in controversy in his capacity as caretaker of the same by virtue of an appointment issued in his favor by a Department of the Federal Government which has held possession of the property for over thirty years.

The action of unlawful detainer is a possessory action. In it only the right to the possession of an immovable may be considered, and it does not lie where it involves a conflict of titles. However, where a defendant in an action of unlawful detainer, as in the case at bar, holds possession of the property the subject matter of the action for the purpose of keeping or enjoying it while the ownership belongs to another person (§362, Code of Civ. Proc., 1933 ed.), he may set up as a defense that he holds possession as the representative of the real owner, who is a person other than the plaintiffs. *Díaz* v. *Morales* (1929) 39 P.R.R. 65, 68. This

was what Mulero did and, accordingly, he made a *prima facie* showing of the absolute nullity of plaintiffs' title by presenting evidence which tended to show that the third person for whom he was acting had been in possession of the property in controversy for over thirty years, which we think he could do, since his right to the possession is based on the supposed right of the principal.

The defendant had to show that his right to the possession of the property involved in the litigation was not a mere pretext (*Colón* v. *Colón, supra*), and we think that he did so.

■■ As to the question of whether the Federal Government should or should not have been made a party defendant, or whether it was a party to the action, we have already indicated that it never was a party to the suit and that the lower court erred in regarding it as such party in its opinion; but this was really a *lapsus* and the error caused no prejudice to the plaintiffs-appellants. The Federal Government was not a necessary party to this suit. In *Morera* v. *District Court* (1942), 60 P.R.R. 188, 194, this court speaking through Mr. Chief Justice Del Toro said:

"It is sought to recover the use of a road of which the plaintiff alleged to have held possession within the year next preceding the filing of the complaint, and of which use he had been deprived by the acts·done by the defendants.

"The road crosses the parcels of land occupied by two of the defendants, viz., Ramón Rivera and Benigno González, and even conceding that the parcels belong to the United States and are under the control of the Puerto Rico Reconstruction Administration (P.R.R.A.) and that José Ramírez Martín, the other defendant, and petitioner Luis M. Morera, as the agents of the P.R.R.A., had control of the road, even so, it could not be concluded that it became necessary to sue directly the United States in order to confer jurisdiction on the court to hear and determine the case.

"In support of the above conclusion it will be sufficient for us to quote from *Baldrich* v. *Barbour*, 90 F. (2d) 867–869, as follows:

" 'This is an action brought in the United States District Court for Puerto Rico for the recovery and possession of certain lands situated in Puerto Rico. The original plaintiffs in the action and certain "plaintiffs in intervention" set forth in their complaint that they are the owners in fee simple of approximately 6,000 acres of land situated in the municipal districts of Río Grande, Naguabo, Fajardo, and Luquillo, describing it by boundaries.

" ' * * * * ' * * *

" 'The defendant claims the right of possession of all lands included in the Luquillo Forest Reserve in his capacity as forest supervisor, which includes the lands claimed by the plaintiffs in this action; that they have been occupied and possessed by his predecessors in office since 1903; and the plaintiffs admit that the lands described in the complaint have been in the exclusive possession of the Supervisors of the Forest Reserve since 1913.

" ' '(1) This is clearly not an action to settle the title to the lands. If so, the United States must have been made a party, which could not be done without its consent, *United States* v. *Lee,* 106 U.S. 196, 1 S. Ct. 240, 27 L. Ed. 171; and in this case, which came before this court on demurrer, 71 F.(2d) 9, it was held that it was a suit to recover possession only, and while the defendant must show that the United States had title to sustain his right of possession, the suit was not one to settle the title to the lands described.' ''

In our opinion, this doctrine is fully applicable to the case at bar, and although the lower court committed the above-mentioned error, the same is not sufficient to cause a reversal of the judgment appealed from.

■■ In their seventh assignment of error the appellants urge that the lower court erred "in holding as proved that the Federal Government had acquired title to Luis Peña Key by reason of the fact that the grant to Don Cayetano Escudero was a conditional one and the grantee had failed to comply with the conditions."

The lower court had no power to enter into a consideration of the question of whether or not the Federal Government had actually acquired title to the property involved in the present action of unlawful detainer. Conflicts of title can not be decided in summary proceedings of this kind in which

it is only sought to recover the possession of an immovable by the person who has the right to such possession. As the defendant had made out a *prima facie* case with respect to the absolute nullity of plaintiffs' title by alleging facts sufficient for this purpose, the lower court acted correctly in dismissing the complaint. *Colón* v. *Colón, supra.*

An appeal is taken from the judgment and not from the reasoning or grounds on which it is based. *Colón* v. *The Shell Co.,* 55 P.R.R. 575. So that even though the reasoning of the judge be erroneous, if the conclusion reached by him in the judgment is correct, the same will prevail. *Totti* v. *Fernández,* 40 P.R.R. 609. Hence, where a judgment is correct it should not be disturbed because of any error in the reasoning of the trial judge. *Serrallés* v. *Saurí,* 44 P. R.R. 390.

In the eighth assignment it is urged that the lower court erred "in concluding that the defendant not only had made out a *prima facie* case of nonexistence of plaintiffs' title but had gone even further and presented a substantial case of absolute nullity, without there being any allegation in the defendant's answer which would support such conclusion."

The action of unlawful detainer at sufferance is available against a person who holds possession of an immovable without any right thereto and without paying any rent or consideration. Therefore, in such an action it is sufficient for the defendant to produce enough evidence before the court to show that he has some right to occupy said immovable or that he holds as good or a better title than the plaintiff in order to set up a conflict of titles precluding the action. This is what happened in the present case. From the whole evidence introduced by the defendant there arises clearly a conflict of titles which renders the action of unlawful detainer improper. The allegations of the defendant are not

a mere pretext and the rights of the parties should be determined in the proper plenary suit.

For the reasons stated the judgment appealed from must be affirmed.